**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* A.S. and A.M.

**No. 21-0318** (Lewis County 20-JA-23 and 20-JA-24)

**MEMORANDUM DECISION**

Petitioner Mother J.M., by counsel Ira Richardson, appeals the Circuit Court of Lewis County's March 23, 2021, order terminating her parental rights to A.S. and A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Melissa T. Roman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and denying post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2020, the DHHR filed a child abuse and neglect petition against petitioner alleging that five-year-old A.S. and four-year-old A.M. were living in a home with ongoing sexual abuse against other children who are not at issue in this appeal. The DHHR further alleged that the home was unsanitary, lacked running water, did not have a working toilet, and was filled with animal feces and urine. The DHHR asserted that petitioner lived with E.E. and T.E. in a residence that the latter owned. According to the DHHR, the owners of the residence also allowed a nineteen-year-old man, J.K., to stay at the residence. According to the petition. J.K. had shown his penis to at least one of the children living in the home, twelve-year-old R.B., who is not at issue on appeal.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

The DHHR also alleged that J.K. took pictures of R.B.'s breasts and sexually abused the child inside the home.

According to the petition, a Child Protective Services ("CPS") worker and a West Virginia State Police trooper visited the home in June of 2020 and interviewed J.K. about the sexual abuse allegations. The DHHR alleged that the CPS worker and trooper also spoke to the children inside the home. The DHHR alleged that the trooper later interviewed J.K. at the Lewis County State Police detachment, where J.K. admitted to engaging in sexual intercourse with twelve-year-old R.B. inside the home. A CPS worker interviewed R.B., who confirmed that J.K. engaged in sexual intercourse with her in the home. The child also disclosed that another man, C.F., a registered sex offender, had stayed in the home and sexually abused her on numerous occasions there. Upon further inquiry, R.B. disclosed that the owners of the home were sleeping in a bed, less than three feet away, when the incidents of abuse took place.

The DHHR further alleged that a CPS worker also interviewed A.S. and A.M., who were living inside the residence at the time of the sexual abuse. The children disclosed that petitioner had left them at the home in October of 2019 and occasionally stayed at the residence herself. The children disclosed that petitioner had her own home "but did not want to keep them with her." Additionally, the DHHR alleged that A.S. and A.M. were very dirty and when A.S. was taken to a temporary placement, her hair was "extremely knotted and the child was pulling at it trying to get her hair apart but it was so matted that she was breaking and pulling it out."

After the disclosures of abuse, the DHHR enacted a temporary protection plan. As a result of the safety plan, CPS workers removed A.S. and A.M. from the residence and contacted petitioner to take custody of the children. However, the DHHR alleged that petitioner refused to pick up the children and stated she was camping with her boyfriend for the next six days and would not return before then.

The DHHR filed an amended petition in September of 2020 alleging that, in January of 2020, petitioner took A.S. to Stonewall Jackson Memorial Hospital with a complaint of "nausea and vomiting" and stated that A.S. "confessed to [a] neighbor that she was touched inappropriately by [a] male subject." According to the amended petition, A.S. reported that she was in a trailer when a man removed her pants and touched her on the upper leg. At the instruction of staff at the hospital, petitioner took the child to Ruby Memorial Hospital to undergo an examination by a sexual assault nurse examiner ("SANE"). According to the amended petition, medical records from Ruby Memorial Hospital indicated petitioner told hospital staff that a family friend had been supervising A.S. earlier that day. Petitioner indicated that A.S. told her she was sexually assaulted by a neighbor. Petitioner indicated to the hospital staff that the alleged offender was a registered sex offender who had been around the child before. The DHHR alleged that the registered sex offender was C.F., who resided in a camper next to the home from which A.M. and A.S. were initially removed.

The circuit court held an adjudicatory hearing in September of 2020 during which petitioner stipulated to abusing and neglecting the children. Petitioner admitted to allowing A.S. and A.M. to live in substandard conditions, that A.S. disclosed that she had been sexually abused, that she failed to take custody of the children upon their initial removal, and that the children were

dirty with matted hair at the time of their removal from the residence. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. After the hearing, petitioner moved for a post-adjudicatory improvement period.

In December of 2020, the circuit court held a hearing during which petitioner testified that she resided in T.E. and E.E.'s residence for several months in 2019 and 2020 because her home did not have water. However, petitioner conceded that T.E. and E.E.'s residence also lacked running water. Petitioner further acknowledged that after bringing A.S. to a local hospital for a SANE exam in January of 2020, she continued to allow the children to reside at T.E. and E.E.'s residence, where A.S. was assaulted. Petitioner defended her actions and testified that A.S. was "tested" and explained that the test indicated the child "was never touched." Petitioner further explained that she did not believe C.F. would touch the child because she knew C.F. when he was employed at a local restaurant. Petitioner testified that she knew prior to January of 2020 that C.F. was a registered sex offender because she saw his name on the registry but stated that she did not believe he was actually a sex offender. Petitioner admitted that she took no effort to remove A.S. and A.M. from the residence and took no effort to report her concerns about J.K. to CPS or law enforcement. Petitioner defended her lack of action, stating she was unsure if A.S.'s allegations of sexual abuse were true.

The circuit court held a dispositional hearing in March of 2021 wherein the DHHR moved to admit the results of petitioner's psychological evaluation. The DHHR presented evidence that although petitioner had previously admitted to knowing about the sexual abuse of the children in T.E. and E.E.'s home, she denied knowledge of any sexual abuse during her psychological evaluation conducted after adjudication. After considering the evidence, the circuit court found that petitioner exposed the children to numerous sex offenders and allowed the abusers to have unfettered access to the children. The circuit court found that petitioner accompanied A.S. to a SANE exam, but then complained about the length of the exam and remarked that if she knew the length of time involved, she would not have brought the child to the exam. Further, the court found that petitioner falsely claimed to have received results from the exam and falsely stated that A.S. was "not touched," and used the false results to justify allowing the children to continue staying at T.E. and E.E.'s residence.

The court also found that petitioner had not communicated with the DHHR about the status of A.S. and A.M.'s wellbeing since their removal from her custody in June of 2020. The court noted that neither child had requested visitation or contact with petitioner. The court further found that petitioner continued to deny that the children were abused, despite her prior stipulation and adjudication as an abusing parent. The court found that petitioner continued to dispute the nature of the allegations during her psychological evaluation. The court found that petitioner's psychological evaluation noted that she lacked the parental capacity to care, protect, or change in order to provide for the children. Finally, the court found that given "the nature and duration of the abuse and neglect perpetrated upon [the children] in this matter by [petitioner], and the abuse and neglect" she allowed T.E. and E.E. "to perpetrate upon [A.S. and A.M.]," it did not believe it would "ever be possible to reunite the children with [petitioner]." Accordingly, the court

terminated petitioner's parental rights to the children and denied post-termination visitation. Petitioner now appeals from the circuit court's March 23, 2021, dispositional order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. Petitioner contends that she "enter[ed] a stipulated answer to the petition admitting to the allegations . . . and did participate in all aspects of the case showing by clear and convincing evidence that she would fully participate in an improvement period." We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the

---

[2]The father voluntarily relinquished his parental rights below. The permanency plan for the children is adoption by an adult cousin.

4

perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. Even after stipulating to abusing and neglecting the children, petitioner continued to dispute any wrongdoing during her psychological evaluation. While petitioner argues that she proved she was likely to participate in an improvement period because of her stipulation, her subsequent actions demonstrate that she did not take responsibility for leaving the children in an unsafe environment that led to the sexual abuse of A.S. Although petitioner did accompany the child to a medical examination, she later lied about the results of the exam and returned the children to the environment where sexual abuse was perpetrated. As such, there is ample evidence that petitioner's repeated failures to acknowledge the conditions of abuse and neglect resulted in her inability to establish that she was likely to fully participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Moreover, this evidence supports a finding that termination of parental rights was necessary for the welfare of the children. Clearly, petitioner presented a danger to the children if in her custody. Additionally, "we find that adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most consistent with the child's best interests." *State v. Michael M.*, 202 W. Va. 350, 358, 504 S.E.2d 177, 185 (1998) (internal quotations omitted). While petitioner argues the circuit court could have terminated petitioner's custodial rights only, the circuit court's termination of petitioner's parental rights was necessary to facilitate adoption for the children. As such, it is clear that termination of petitioner's parental rights was necessary to provide permanency for the children and, therefore, necessary for their welfare. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a lesser-restrictive alternative.

Petitioner's final assignment of error concerns the circuit court's denial of her request for post-termination visitation. Petitioner argues that there is an "unmistakable bond between [her] and the minor children." Petitioner contends that she has remained interested in the day-to-day

activities of the children and believes it would be in the best interest of the children to maintain a bond and relationship with her. As such, petitioner asserts that post-termination visitation would be appropriate. We disagree.

In addressing post-termination visitation, the Court has directed as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found that it was not in the children's best interests to grant visitation. First, the disturbing facts surrounding the many findings of sexual abuse inside E.E. and T.E.'s home, including petitioner's knowledge of some of these incidents, support the circuit court's denial of post-termination visitation with the children. Further, as the circuit court found below, petitioner "refused to accept that the sex offenders she exposed the children to were indeed sex offenders." The circuit court also found that neither child had made requests for visitation or contact with petitioner after their removal from her custody. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 23, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton